UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| IN THE MATTER OF | NUMBER |
| **TIMITHY PAUL BREAUX** | **04-16993** |
| | **SECTION A** |
| DEBTOR | |
| | |
| **DANIEL A. SMITH, TRUSTEE** | ADVERSARY NUMBER |
| PLAINTIFF | **04-1216** |
| V. | |
| **JUDY D'AGOSTARO and** | |
| **PETER RINALDI** | |
| DEFENDANTS | CHAPTER 7 |

**MEMORANDUM OPINION**

Trustee Daniel A. Smith sued defendants Judy D'Agostaro and Peter Rinaldi to recover the debtor's payments to them during the ninety days preceding debtor's chapter 7 petition on an August 22, 2003 bond for deed contract ("the Contract").  The trustee's complaint alleged that:

(1)      the payments were property of the estate, and therefore must be turned over to him;

(2)      the payments were transfers recoverable under 11 U.S.C. §548;

(3)      in the alternative, the three payments are preferential transfers avoidable under 11 U.S.C. §547; and

(4)      in further alternative, the trustee may recover the payments using the

revocatory action, Louisiana Civil Code articles 2036, *et seq.*[1]

The defendants' answer contends that the Contract is an executory contract, but

does not explain why the executory nature of the agreement is a defense to the trustee's

claim.  In the alternative, defendants argue that the Contract should be treated as a

mortgage that secured their claims throughout the ninety days before debtor's bankruptcy

filing.  Based on that premise, defendants reason that the payments they received during

that period are not subject to avoidance as preferences under Bankruptcy Code §547,

because they did not enable defendants to recover more than they would in a chapter 7

liquidation.  Finally, the defendants also argue that, even if the pre-petition payments

were preferences, they cannot be avoided because the debtor received in exchange for

them new value in the form of continued occupancy of the house that was the subject of

the bond for deed agreement.

The trustee has established that the payments are avoidable preferences, and is

entitled to judgment on his claim under 11 U.S.C. §547.  The remaining counts of the

complaint will be dismissed.

## I.  FACTS

The facts of this lawsuit are relatively simple, and essentially undisputed.

On August 18, 2003, the debtor and the defendants executed an Agreement to

Purchase or Sell under Louisiana Bond for Deed Contract.[2]  Four days later, debtor and

---

[1]   Bankruptcy Code §544(b), the "strong-arm provision" of the Code, allows a trustee to use
nonbankruptcy law remedies to avoid pre-petition transfers and obligations if a creditor holding an
unsecured claim could do so.  *In re Zedda*, 103 F.3d 1195, 1201 (5th Cir. 1997).

[2]   Agreement to Purchase or Sell under Louisiana Bond for Deed Contract (Joint Exhibit M).

his wife entered into the Contract[3] with Judy D'Agostaro.  In the Contract, debtor and his

wife (jointly designated as "Purchaser") and D'Agostaro (designated as "Seller")[4] agreed

that Purchaser would acquire the Property at 83 Creagan Avenue in Gretna, Louisiana

("the Property") when the Purchaser discharged his obligations under the Contract. The

transaction was undertaken pursuant to Louisiana statutes providing for bonds for deed.

*See* La. R.S. 9:2941-2949.[5]

At closing the debtor made a $5,600 down payment toward the agreed purchase

price of $86,000.  The $80,400 balance, with interest at the rate of 6.25% per annum, was

payable beginning September 20, 2003 in 359 equal and consecutive monthly payments

of principal and interest totaling $495.04, plus a final payment.  The Purchaser also

agreed to an initial monthly escrow payment of $146.25, which was subject to change in

the future, plus any state, local or other assessments and the servicing fees charged by the

escrow company, Southern Escrow and Title Services, Inc. ("Southern Title").[6]

When the parties signed the Contract, they also signed an act of sale captioned

"Cash Sale"[7] and a separate agreement under which Southern Title was to hold the Cash

Sale in escrow[8] ("Escrow Agreement").[9]  The Escrow Agreement acknowledged that the

---

[3]  Bond for Deed contract (Joint Exhibit A).

[4]  Co-defendant Peter Rinaldi owns a one-half interest in the Property, though his name is not on the title and he is not named as a seller in the bond for deed contract.

[5]   A bond for deed is a contract to sell real property in which the seller and buyer agree that the buyer will pay the purchase price in installments, and that after payment of a stipulated sum, the seller will deliver title to the buyer.  La. R.S. 9:2941.

[6]  The record was not especially clear on the use of escrowed funds.  Although the debtor as purchaser was liable for taxes and insurance, apparently they were paid from the escrow.

[7]  Cash Sale of Property (Joint Exhibit B).

[8]  Agreement to Hold Act of Sale in Escrow (Joint Exhibit C).

3

Seller had not transferred title to the Property, and recited that the Cash Sale would not be

released from escrow and delivered to Purchaser until the purchaser had performed all

duties it undertook in the Contract.

Beginning September 30, 2003 and continuing through at least September 13,

2004, the date of the bankruptcy petition, the debtor occupied the Property and made

consecutive monthly payments of $641.29 to Southern Title.  Specifically, in the ninety

day period before the debtor's bankruptcy filing, the debtor made three monthly payments

totaling $1,923.87 to Southern Title.[10]  As it received each monthly payment, Southern

Title disbursed $247.52 to Ms. D'Agostaro and $247.52 to Mr. Rinaldi.  It held $146.25

of each payment as a reserve for future *ad valorem* taxes and insurance on the Property.

## II.    ANALYSIS

### A.  The Payments are not Property of the Estate.

The first cause of action in the trustee's complaint is for turnover of the payments

Breaux made to the defendants on the ground that they were "property of the estate," and

presumably subject to recovery under 11 U.S.C. §542.[11]

Neither the trustee's pre-trial memorandum nor the pretrial order referred to this

theory, and the trustee offered absolutely no evidence to support the conclusion that the

pre-petition payments are property of the estate under 11 U.S.C. §541.  Therefore, they

---

[9]   The parties signed several other documents at the closing:  Settlement Statement (Exhibit E), Mutual
Cancellation of Contract (Springing) for Sale by Bond for Deed (Exhibit F), Release Bond for Deed
(Exhibit G), Service Agreement, Louisiana Bond for Deed Contract (Exhibit H), Tax Proration Agreement
(Exhibit I), Bond for Deed:  Insurance and Tax Requirements (Exhibit J), Understanding Louisiana's Bond
for Deed (Exhibit K), Seller's/Owner's Affidavits and Indemnity (Exhibit L).

[10]   Check no. 1026 dated June 23, 2004; check no. 1034 dated July 22, 2004; and check no. 1042 dated
August 25, 2004.

[11]   Although the trustee did not cite any authority for his demand, the context indicates that it was based on
11 U.S.C. §542, the Bankruptcy Code provision empowering a trustee to recover among other things
property the trustee may use, sell or lease.

are not subject to turnover under 11 U.S.C. §542.  *In re Santaella*, 298 B.R. 793, 799

(Bankr. S. D. Fla. 2002) (in turnover proceedings, trustee has burden of establishing a

prima facie case before the burden shifts).

### B.  The Payments were not Fraudulent Transfers.

The trustee also contends that the payments were fraudulent transfers under 11

U.S.C. §548.  Although the complaint did not identify the specific subsection of section

548 upon which plaintiff's claim is based, references in paragraph 12 to the debtor's

insolvency indicate that the trustee relies on Bankruptcy Code section 548(a)(1)(B).[12]

That section of the Code provides in part --

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in
> property, or any obligation incurred by the debtor, that was made or
> incurred on or within one year before the date of the filing of the petition,
> if the debtor voluntarily or involuntarily—
>
> . . .
>
> (B) (i) received less than a reasonably equivalent value in exchange
> for such transfer or obligation; and
>
> (ii) (I) was insolvent on the date that such transfer was made or
> such obligation was incurred, or became insolvent as a result of
> such transfer or obligation ….

"The burden of proof of establishing the existence of the elements of a voidable

transfer under section 548 of the Bankruptcy Code rests on the trustee."  5 COLLIER ON

BANKRUPTCY ¶548.10, 548-80 (15th ed. rev'd 2005).

---

[12]  The trustee has not contended or proven that the debtor possessed any intent to hinder, delay or defraud
in connection with the Contract or any payments under the Contract.  Thus Bankruptcy Code §548(a)(1)(A)
is inapplicable.

The trustee established the debtor's insolvency[13] during the ninety day period

before the petition through the debtor's testimony.  Sellers offered no evidence to refute

the testimony.

The debtor's payments were made in exchange for the right to acquire title to the

Property upon completion of the terms of the parties' agreement.  Accordingly, each

payment was "value" because it was in partial satisfaction of an antecedent debt: the

debtor's obligations under the Contract.  *In re B.Z. Corporation*, 34 B.R. 546, 548 (Bankr.

E.D. Pa. 1983) ("The loan payments made within one year prior to the filing of the

petition are not avoidable since under § 548(d)(2)(A) the payments were made for value,

i.e., 'the satisfaction of … [an] antecedent debt of the debtor .'")

However, the trustee offered no evidence to show that debtor received less than

*reasonably equivalent* value in exchange for his payments.  In contrast, defendant

Rinaldi, who has co-owned the Property with D'Agostaro since 1985, testified that the

defendants received between $600 and $625 per month in rent for the Property before the

August 2003 bond for deed contract.  The difference between that amount and the

debtor's monthly payment on the Contract is insignificant on the record of this case.

*Compare In re Trace International Holdings, Inc.*, 278 B.R. 98, 109 (Bankr. S.D.N.Y.

2002) (denying summary judgment on issue of "reasonably equivalent value.")

The trustee did not sustain his burden of proof under 11 U.S.C. §548, and his

claim for avoidance on that ground will be dismissed.

---

[13]   *Insolvent* is defined in 11 U.S.C. §101(32) as a financial condition in which the entity's debts is greater
than all of the entity's property at a fair valuation, with exceptions not relevant here.

**C.  The Payments to Sellers Were Preferential.**

The trustee alleges that the debtors' three prepetition payments are preferences

avoidable under 11 U.S.C. §547.[14]  The defendants did not refute any of the trustee's

evidence, or dispute that the debtor's payments were made on account of an antecedent

debt, within the ninety day period before Breaux filed bankruptcy.

The trustee testified that unsecured creditors of the estate will receive nothing

unless the three transfers are avoided.  The trustee's uncontradicted testimony establishes

that as a result of the pre-petition payments, the defendants received more than they

would have, had the estate been liquidated under chapter 7 and defendants received

payment according to the terms of the Bankruptcy Code.

To summarize, the trustee established by essentially uncontested evidence that the

three payments are avoidable preferences because the transfers:[15]

> 1) were made to or for the benefit of creditors -- the defendants (11
>    U.S.C. §547(b)(1));
>
> 2) were made on account of an antecedent debt -- the Contract (11
>    U.S.C. §547(b)(2));
>
> 3) were made while the debtor was insolvent (11 U.S.C.
>    §547(b)(3))[16];

---

[14]   Although Southern Title was the initial transferee for each payment, the trustee may recover from
subsequent transferees of the initial transferee.  Bankruptcy Code §550(a) allows the trustee to recover
avoided transfers from: "(1) the initial transferee of such transfer or the entity for whose benefit such
transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  The parties have
not disputed that the defendants are transferees from whom the trustee is entitled to recover should the
court order the transfers avoided under §547.

[15]   11 U.S.C. §547(g).

[16]   In addition to the debtor's testimony, the trustee relies on Bankruptcy Code §547(f), under which the
debtor is presumed to have been insolvent during the ninety days before he filed chapter 7.  Defendants
offered no evidence to rebut that presumption.

7

4) were made within ninety days before the debtor filed his bankruptcy petition (11 U.S.C. §547(b)(4)); and

5) enabled the defendants to receive more than they would have if the transfers had not been made, and their claim had been paid through the chapter 7 process. (11 U.S.C. §547(b)(5)).[17]

### D. The Sellers' Defenses to the Preference Claim are Meritless.

Sellers have raised several defenses to the trustee's claim. Each of those defenses lack merit.

### 1. Payments on a Rejected Executory Contract May be Avoidable Preferences.

The parties agree that the Contract is an executory contract within the meaning of 11 U.S.C. §365, "because performance remains due to some extent on both sides."[18] The defendants mistakenly reason that payments pursuant to an executory contract cannot be avoided. To the contrary, if a trustee proves all other requirements for establishing a preference under 11 U.S.C. §547(b), pre-petition payments on an executory contract that later is rejected (or deemed rejected) may be recovered as preferences. *In re Superior Toy & Manufacturing Co., Inc.*, 78 F.3d 1169, 1172 (7th Cir. 1996) ("If the contract is not assumed, the contracting party is subject to § 547(b).")[19]

---

[17] Because the trustee established that creditors holding unsecured claims would receive no payment on their claims absent recovery from the defendants in this adversary proceeding, he proved that D'Agostaro and Rinaldi received more as a result of the pre-petition payments than they would have received, had the transfers not been made and had they been left holding unsecured claims against the estate.

[18] "[T]he relevant inquiry is whether performance remains due to some extent on both sides." *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994).

[19] In contrast, once an executory contract is assumed, pre-petition payments on the contract cannot be recovered as preferences, because in order to assume the contract, the trustee must cure most defaults. 11 U.S.C. §365(b)(1)(A). *In re Kiwi Intern. Airlines, Inc.*, 344 F.3d 311, 318-19 (3d Cir. 2003) (debtor's payments during 90-day preference period on executory contracts and unexpired leases later assumed and assigned were not preferences because they did not enable payees to receive more than they would have received in hypothetical chapter 7 liquidation, since debtor would have been required to cure monetary defaults in order to assume and assign contracts); *Matter of Superior Toy & Manufacturing Co., Inc.,* 78 F.3d 1169, 1172-5 (7th Cir. 1996) (affirming lower courts' rulings dismissing preference claim against non-

The defendants' misunderstanding of the effect of bankruptcy on the parties' rights

under the Contract merits further explanation.

Bankruptcy Code §365(d)(1) provides:

> In a case under chapter 7 of this title, if the trustee does not
> assume or reject an executory contract or unexpired lease
> of residential real property or of personal property of the
> debtor within 60 days after the order for relief, or within
> such additional time as the court, for cause, within such 60-
> day period, fixes, then such contract or lease is deemed
> rejected.

Because the trustee did not assume or reject the Contract within sixty days after

the debtor filed bankruptcy, the Contract was deemed rejected. *In re Miller*, 282 F.3d

874, 876-877 (6th Cir. 2002) (lease of mobile home lot deemed rejected where trustee did

not move to assume within 60 days after bankruptcy filing). Rejection is treated as a pre-

petition breach of an executory contract. 11 U.S.C. §365(g)(1).

Once the Contact was deemed rejected, the defendants held a pre-petition

unsecured claim against the estate, even though the debtor was current on all his

obligations under the Contract. 11 U.S.C. §502(g). Rejection simply freed the estate

from performing under the Contract. *In re Drexel Burnham Lambert Group, Inc.*, 138

B.R. 687, 703 (Bankr. S.D.N.Y. 1992); *In re Schnabel*, 612 F.2d 315, 317 (7th Cir. 1980).

Although §365(g) provides that rejection "constitutes a breach" in order to preserve the

creditor's pre-petition claim, rejection did not terminate the Contract. *Eastover Bank for*

*Savings v. Sowashee Venture (In re Austin Development Co.)*, 19 F.3d 1077, 1082 (5th

Cir. 1994); Andrew, EXECUTORY CONTRACTS IN BANKRUPTCY: UNDERSTANDING

---

debtor party to assumed contract, reasoning that contracting party was entitled to 100% of its claim in
exchange for forced performance under the assumed contract); *In re Im*, 256 B.R. 437, 441 (Bankr. W.D.
Pa. 2000) (denying chapter 13 debtor recovery of sums deposited to cure lease assumed in plan because
assumption of lease required cure of defaults).

"REJECTION," 59 U. Colo. L. Rev. 845, 848 (1988) ("[r]ejection does not change the

substantive rights of the parties to the contract or lease, but merely means that the

bankruptcy estate itself will not become a party to it.")

The debtor's discharge barred the defendants from pursuing any claims again

him,[20] and now the debtor cannot be forced to perform on the Contract, though the

evidence was that he has continued to fulfill his contractual obligations to Seller.

No party proved a default on the Contract – save the hypothetical default that

resulted from the deemed rejection of the agreement.  The debtor has continued to occupy

the premises since he signed Contract and continued to fulfill his obligations under the

Contract.  Thus the Seller's right to offset the fair rental value of the occupancy against its

liability to the Purchaser (or the estate) had the Contract had been terminated[21] is not at

issue here, and has no bearing on the trustee's recovery under 11 U.S.C. §547.

In sum, although the Contract is executory within the meaning of 11 U.S.C. §365,

its executory nature is not a defense to the trustee's claim under 11 U.S.C. §547.

**2.   The Contract is not a Mortgage.**

To defeat the trustee's claim under 11 U.S.C. §547, the defendants also argue that

the bond for deed is a mortgage.  If the bond for deed constitutes a mortgage, the trustee's

preference claim may fail because pre-petition payments to creditors whose claims are

fully secured are not subject to recovery as preferences under 11 U.S.C. §547.  In that

case, by definition the mortgage creditor does not receive more than it would in a chapter

---

[20]   *See In re Beck*, 272 B.R. 112, 121 (Bankr. E. D. Pa. 2002) (damages for debtor's failure to make last
post-petition payment on automobile lease not in default at time of bankruptcy, but rejected afterward, were
part of lessor's unsecured claim, which was discharged).

[21]   Louisiana jurisprudence allows a buyer defaulting on a bond for deed contract to recover all sums paid
under the contract, less the fair rental value of the premises during the time the buyer occupied them.  *See*
discussion below, p.14.

7 liquidation – the touchstone of a preference.  *In re Missionary Baptist Foundation, Inc.*,

796 F.2d 752, 759 (5th Cir. 1986).

Louisiana Civil Code article 3278 defines a mortgage as a nonpossessory right

created over property to secure the performance of an obligation.  A mortgage gives the

mortgagee the right to seize and sell the property subject to the mortgage if the obligor

defaults on the obligation the mortgage secures.  La. Civil Code art. 3279.  Mortgages

may only be established as authorized by legislation.  La. Civil Code art. 3280.

A bond for deed is not a mortgage.  It is a contract to sell immovable property --

the Louisiana version of the common law conditional sale.[22]  Although property subject

to a bond for deed may also be subject to a mortgage, the statutory scheme makes plain

that the bond for deed itself is not a mortgage.  *See e.g.*, La. R.S. 9:2942, 2943, 2946.

Indeed, Darryl Bourgeois, office manager for Southern Title (the escrow agent under the

Contract), testified that bond for deed contracts are employed to *avoid* the effects of due

on sale clauses found in many mortgages.

### 3.  The Payments were not Contemporaneous Exchanges for New Value.

Defendants also argue that the three payments are protected from avoidance as

contemporaneous exchanges for new value under 11 U.S.C. §547(c)(1).[23]  The so-called

---

[22]  *Lightfoot v. Huffman (In re Brown)*, 325 B.R. 169, 174 (Bankr. E.D. La. 2005), citing Comment, *The Conditional Sale in Louisiana Jurisprudence: Anatomy of a Synecdoche*, 54 LA. L. REV. 359, 362-3 (1993).

[23]  Bankruptcy Code §547(c) (in part):

The trustee may not avoid under this section a transfer-

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

11

"new value" defense protects pre-petition transactions that do not result in a diminution

of the bankruptcy estate. *In re JWJ Contracting Co., Inc*., 371 F.3d 1079, 1081-2 (9th

Cir. 2004).  A transfer does not diminish the estate if the debtor receives "new value" on

account of and equal to the amount of the transfer.  *In re Fuel Oil Supply & Terminaling,*

*Inc.*, 837 F.2d 224, 228 (5th Cir. 1988); *In re Cocolat*, 176 B.R. 540, 548 (Bankr. N.D.

Cal. 1995), citing *In re Jet Florida Systems, Inc.*, 841 F.2d 1082, 1084 (11th Cir. 1988).

The trustee argues that no contemporaneous exchange occurred or was even

intended.  He contends that the debtor received nothing in exchange for the monthly

payments that he did not already possess when he signed the Contract in August 2003.

To prevail on this defense, defendants[24] must demonstrate that:

(1) the creditor extended new value to the debtor in exchange for the payment or

transfer;

(2) the exchange of payment for new value was intended by the debtor and the

creditor to be contemporaneous; and

(3) the exchange was in fact substantially contemporaneous.

*In re Arrow Air, Inc*., 940 F.2d 1463, 1465 (11th Cir. 1991).  The party seeking to shelter

a payment under this exception "must prove with *specificity* the measure of new value

given the debtor in the exchange transaction he seeks to protect."  *Id*. at 1466 (emphasis

in the original).  Additionally, even "transactions that appear at first glance to be

contemporaneous exchange[s] for new value will not be considered under subsection

---

(B) in fact a substantially contemporaneous exchange.

[24]   Bankruptcy Code §547(g) places the burden of proving nonavoidability under 11 U.S.C. §547(c) on the
party from whom recovery is sought.

547(c)(1)(A) absent a showing that the parties actually intended the exchange to be

contemporaneous."  5 COLLIER ON BANKRUPTCY ¶547.04[1][a], 547-50 (15th ed. rev'd

2005).

Neither the Contract nor any other evidence supports the conclusion that the

debtor's monthly payments were intended to constitute new value.

The Contract granted Purchaser "the immediate right of exclusive occupancy of

the Property upon execution of this Contract. …"[25]  Neither this language, nor any other

provision of the Contract, fairly can be read to imply that the debtor's continued

occupancy was intended by the parties to be a contemporaneous exchange for his

monthly payments.  The debtor acquired the right to occupy the property when he signed

the Contract in 2003.  His right to occupancy thus is not a contemporaneous exchange for

his payments, and accordingly is not new value.  *See In re Wadsworth*, 711 F.2d 122, 124

(9th Cir. 1983) (installment payments on pre-existing promissory note during preference

period were not contemporaneous exchanges for new value within meaning of 11 U.S.C.

§547(c)(1)).

Perhaps as significant, the defendants did not even introduce any evidence that

they or the debtor intended the payments to be contemporaneous exchanges for new

value, rather than payments on account of the antecedent debt.

Accordingly, defendants have failed to prove their "new value" defense.

---

[25]   Bond for Deed contract (Joint Exhibit A), p. 4.

### 4.       The Court's Equitable Powers Do Not Provide a Remedy.

Defendants also ask the Court to use its equitable powers under 11 U.S.C. §105 to

allow defendants to retain the payments as fair rental value of the Property.  They argue

that they would be entitled to fair rental value for the time debtor occupied the Property

had debtor been in default under the Contract pre-petition, citing among other authorities

*Lightfoot v. Huffman (In re Brown)*, 325 B.R. 169 (Bankr. E.D. La. 2005) and *Gray v.

James*, 503 So.2d 598, 602 (La. App. 1st Cir. 1987).  The defendants' plea fails for two

reasons.

First, the defendants have no claim for fair rental value of the Property because

the Contract never terminated.  Had it terminated, the trustee as representative of the

estate under 11 U.S.C. §323 would be entitled to recover all the payments made under the

bond for deed (including the down payment, insurance premiums and taxes), less the fair

rental value of the premises for the period of debtor's occupancy.  *Montz v. Theard*, 818

So.2d 181, 187 (La. App. 1st Cir. 2002), citing *Gray v. James*, *supra,* and *Thompson v.

Bullock*, 236 So.2d 892, 898 (La. App. 3d Cir.), *writ denied*, 256 La. 894, 240 So.2d 231

(1970).  Because the Contract was not terminated pre-petition, defendants do not have a

claim against the estate for the fair rental value of the Property. [26]

Second, and more importantly, this court cannot exercise its equitable powers to

disregard substantive law that allows the trustee to recover the payments as preferential

---

[26]   Moreover, even had the Contract terminated prepetition, La. R.S. 9:2945 and the Contract provision captioned "Default" provide for 45 days' notice of a payment or other default before the agreement can be terminated.  Thus, debtor could have remained in possession of the property without paying on the Contract for *at least* 45 days after the default.

transfers.  *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 24-25, 120 S. Ct. 1951, 1957

(2000).

Accordingly, equity will not permit defendants to offset an alleged claim for fair

rental value of the Property against the trustee's preference claims.

### E.  The Trustee Cannot Recover the Pre-petition Payments by Means of the Louisiana Revocatory Action.

Under the Louisiana revocatory action,[27]

> An obligee has a right to annul an act of the obligor, or the result of a
> failure to act of the obligor, made or effected after the right of the obligee
> a rose, that causes or increases the obligor's insolvency.

La. Civil Code art. 2036.  Bankruptcy Code §544(b)[28] allows a trustee to employ the

revocatory action to augment the bankruptcy estate for the benefit of creditors.  *In re*

*Goldberg*, 277 B.R. 251, 286 (Bankr. M. D. La. 2002).

> In essence, § 544 allows the trustee to step into the shoes of a creditor for
> the purpose of asserting causes of action under state fraudulent
> conveyance laws and confers on the trustee the status of a hypothetical
> creditor or bona fide purchaser as of the commencement of the case.

*In re Zedda*, 103 F.3d 1195, 1201 (5th Cir. 1997).

For purposes of the revocatory action, "[a]n obligor is insolvent when the total of

his liabilities exceeds the total of his fairly appraised assets."  La. Civil Code art. 2037.

Proof of wrongful intent is not necessary: "The criterion for the revocatory action is an

objective one.  It may be satisfied by an act done negligently as well as intentionally." La.

Civil Code art. 2036, Revision Comments-1984, (b).  The trustee bears the burden of

---

[27] Louisiana Civil Code articles 2036 through 2043.

[28] Bankruptcy Code section 544(b) provides:

> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an
> interest of the debtor in property or any obligation incurred by the debtor that is voidable
> under applicable law by a creditor holding an unsecured claim that is allowable under
> section 502 of this title or that is not allowable only under section 502(e) of this title. …

15

proof of all elements necessary to sustain a claim under article 2036. *De La Vergne v. De La Vergne*, 886 So.2d 589, 593, 2004-0412 (La. App. 4th Cir. 10/13/04).

A creditor or trustee may not employ the revocatory action to set aside a transfer in satisfaction of a valid debt. "[A]n obligor's payment of a just and due debt may not be annulled" under article 2036. La. Civil Code art. 2036, Revision Comments-1984, (h). "Although it reduces his assets, it also reduces his liabilities by the same amount." *Id*.

The debtor's payments to the defendants were in payment "of a just and due debt": his obligation under the Contract. The payments reduced his assets, but reduced his liability on the Contract by the same amount. Accordingly, they did not create or increase his insolvency, which is fatal to the trustee's right to recover under article 2036.

### Conclusion

The trustee has proven all the elements under 11 U.S.C. §547(b) for avoidance of the three preferential transfers to defendants. Defendants have not proven a defense under 11 U.S.C. §547(c). Accordingly, the trustee is entitled to avoid the payments received by the defendants (a total of $1485.12, or $742.56 for each defendant), and to recover that amount from the defendants under 11 U.S.C. §550.

The trustee failed to meet his burden of proof under 11 U.S.C. §§542 and 548 and Louisiana Civil Code article 2036, *et seq*., and those claims will be dismissed.

New Orleans, Louisiana, August 2, 2005.

Douglas D. Dodd
U.S. Bankruptcy Judge

16